UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
                                    :

IN RE STMICROELECTRONICS N.V.     :
SECURITIES LITIGATION

                                      :

                                      :

------------------------------------------------------- X

**OPINION AND ORDER
DENYING DEFENDANTS'
MOTION TO DISMISS**

24 Civ. 6370 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

    Defendants move to dismiss this putative class action securities suit for failure to state a claim upon which relief may be granted. For the reasons that follow, I deny Defendants' motion.

## BACKGROUND

    Plaintiffs sue Defendants STMicroelectronics N.V. ("STM"), its Chief Executive Officer, Jean-Marc Chery, and its Chief Financial Officer, Lorenzo Grandi, on behalf of a putative class of all persons and entities that purchased or acquired common stock, or sold put options, in STM between March 14, 2023 and October 30, 2024, alleging violations of the federal securities laws. They claim that Defendants made false and misleading statements with scienter to investors that differed from the internal state of affairs at STM, thereby causing losses to putative class members.

    STM, a publicly-traded company on the New York Stock Exchange, manufactures semiconductor chips and other electronics used in automotive, computer and industrial applications. The automotive market drives the plurality of STM's revenue, but according to a confidential witness, in Fiscal Year 2024, Defendants reorganized STM to break up its automotive chips group and spread its work to other groups, in an effort to conceal the extent of the deterioration of STM's business by mixing profitable products with unprofitable products. STM's business grew in 2021 and early 2022 as the COVID-19 pandemic receded, since

1

customers overordered semiconductor chips to avoid supply chain problems. But Plaintiffs aver that in late 2022, as the semiconductor industry cooled, Defendants predicted continued growth to investors—especially in the automotive sector—despite bleaker reports from industry groups, competitors and suppliers, and objections from a senior STM executive.

Plaintiffs allege that in doing so, Defendants made materially false and misleading statements to investors. Plaintiffs' Second Amended Complaint ("SAC") points to several such specific instances, with explanations as to why these statements were false and misleading, predicated on information provided to Plaintiffs by confidential witnesses who worked at STM. As a common pattern throughout, Chery repeatedly affirmed STM's increasing revenue and sales targets, and projected STM's continued growth, spurred by the automotive sector, notwithstanding evidence to the contrary, including warnings that such information was wrong, provided by the now-former president of STM's automotive division. Specifically, at conferences and earnings calls between March 14, 2023 and July 25, 2024, Chery routinely stated that market demand was solid and strengthening, driven by the automotive sector, when, in fact, it was declining. He repeatedly represented that inventory backlog, indicative of weak demand at STM, was declining, when it was, in fact, increasing, and claimed that STM paid close attention to its inventory control metrics. And he assured investors that he had strong visibility that STM would enjoy moderate growth when, according to a confidential witness, Chery was advised of the contrary. Plaintiffs also point to STM's Annual Report for Fiscal Year 2023, filed on Form 20-F with the Securities and Exchange Commission ("SEC"), which contained a boilerplate disclaimer, and listed several hypothetical risks to STM—including reductions in demand, downturns in the broader semiconductor industry, and high inventory— without disclosing that these risks were actually occurring at the company.

But Plaintiffs aver that, as confirmed by their confidential witnesses, Defendants'

representations to the public and SEC were not true. They allege that Defendants failed to

disclose significant risks that STM faced, including the worsening demand for STM's

semiconductor chips in 2023 and 2024. Ultimately, STM began to announce decreased revenue

targets, causing the price of its common stock to drop from $42.60 per share on April 25, 2024,

the day it initially disclosed its financial results for the first quarter of 2024, to $25.96 on

November 4, 2024, following the release of its SEC disclosure forecast as to its year-end revenue

projections.

Confidential witnesses corroborate Plaintiffs' claims. One confidential witness, who

served as president of STM's automotive division from 2012 through 2023, reported that he

warned Chery that the semiconductor market was slowing down globally, that STM was not

immune from this trend, and not to misrepresent information to the contrary to investors. He also

reported that STM engaged in "channel stuffing" in that it provided excessive discounts to

customers in an effort to artificially inflate sales, decrease inventory and conceal the decline in

demand that STM was experiencing, and that he was ultimately fired in December 2023 for

objecting to such conduct. Other confidential witnesses, who worked in an array of capacities at

STM, attested that customer orders and demand declined in 2023, while STM's inventory

backlog rose, leading to the imposition of a hiring freeze at the company.

Plaintiffs additionally plead scienter by alleging Defendants' delayed disclosure of a

policy revision permitting customers to cancel orders, and by pointing to the core operations

doctrine presumption; pre-existing pressure on Chery to report positive results, according to the

account of a confidential witness, given mounting opposition by STM board members to his

reappointment as CEO in 2024; and Defendants Grandi and Chery's sales of millions of dollars'

worth of personal stock in STM during the class period.

3

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the complaint, I must "accept all well-pleaded factual allegations in the complaint as true" and "construe all reasonable inferences in the light most favorable to the plaintiff." *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020) (citation omitted).

Federal law imposes heightened pleading standards in private securities lawsuits. Specifically, plaintiffs must allege "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). They must also specify each misleading statement made by the defendant and why each statement is misleading, and "if an allegation regarding the statement or omission is made on information and belief," the plaintiff must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). And the plaintiff must also state with particularity the facts giving rise to a strong inference of the defendant's scienter, *see* 15 U.S.C. § 78u-4(b)(2), such that, based on "*all* of the facts alleged, taken collectively . . . a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007) (emphasis in original). In evaluating a motion to dismiss a private securities suit, courts "must be careful not to mistake heightened pleading standards for impossible ones." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 161 (2d Cir. 2021).

## DISCUSSION

Plaintiff allege that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t, and Rule 10b-5 promulgated thereunder, 17

4

C.F.R. § 240.10b-5, which prohibit fraudulent activities in connection with securities transactions. To state a claim for relief under Section 10(b) and Rule 10b-5, a plaintiff must allege that defendants "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005). And to do so under Section 20(a), "a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014).

A misstatement is material when "the defendants' representations, taken together and in context, would have misled a reasonable investor." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 151 (2d Cir. 2021). "Omissions are material when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Id.* Mere "expressions of puffery and corporate optimism do not give rise to securities violations." *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004). But an optimistic statement made with the requisite inference of knowledge of its falsity is actionable under federal securities laws. *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000).

Here, Plaintiffs' SAC meets these strictures. It alleges plausibly various statements Defendants made to the public concerning internal developments and growth at STM, which would have misled a reasonable investor, and which were made with knowledge of their falsity, vis-à-vis internal warnings from the president of STM's automotive division that the forecasts

Defendants were providing to investors contradicted what was actually occurring at the company and in the broader industry. Indeed, the SAC avers that a confidential witness called out Chery in senior staff meetings for misleading investors by stating that demand and growth at STM were on the rise, when the opposite was true, and objected to Defendants' channel-stuffing conduct in writing. "Circumstantial evidence can support an inference of scienter in a variety of ways, including where defendants . . . knew facts or had access to information suggesting that their public statements were not accurate." *Employee Retirement Sys. v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015); *see also In re Solaredge Techs., Inc. Sec. Litig.*, 23 Civ. 9748 (GHW), 2025 U.S. Dist. LEXIS 65381, at *35 (S.D.N.Y. Apr. 6, 2025) (scienter satisfied by "reasonable inference" that defendants were informed of weakening demand at team meetings). And moreover, scienter can be inferred additionally from Defendants' concrete statements regarding inventory visibility, SAC ¶¶ 64, 68, 92, and from their assertions that they were "monitoring very carefully" their inventory and "we monitor pretty well inventory," SAC ¶¶ 104-05. *Guozhang Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 236 (S.D.N.Y. 2023); *In re Salix Pharms., Ltd.*, 14 Civ. 8925 (KMW), 2016 U.S. Dist. LEXIS 54202, at *32-33, 46 (S.D.N.Y. Apr. 22, 2016). Assuming, as I must at the motion to dismiss stage, the accuracy of the SAC's allegations, including the information provided by Plaintiffs' confidential witnesses, I cannot say that Defendants' statements were not materially false and misleading, nor that they do not satisfy the scienter requirement.

The Second Circuit's decision in *Novak* is instructive. There, "the defendants stated that the inventory situation was 'in good shape' or 'under control' while they allegedly knew that the contrary was true," in an effort to keep their stock from falling. *Novak*, 216 F.3d at 315. But the Circuit held that such statements constituted "more than just . . . rosy predictions" but instead

plausibly alleged securities fraud. *Id.* Here too, Defendants repeatedly stated that STM's demand and inventory were in good shape and under control, while knowing that the opposite was the case. *See In re Solaredge Techs.*, 2025 U.S. Dist. LEXIS 65381, at *22-24 (statements regarding "strong" demand in Europe were materially false and misleading given confidential witness allegations to the contrary). And the facts here are also akin to those in the Second Circuit's recent decision in *City of Hialeah Employees' Ret. Sys. v. Peloton Interactive, Inc.*, ___ F.4th ___, No. 24-2803, 2025 U.S. App. LEXIS 22032 (2d Cir. Aug. 27, 2025), in which the Court of Appeals held that a statement on an earning calls that a price reduction was intended to spur market share rather than, as a confidential witness alleged, to dispose of excess inventory, was actionable. *Id.* at *20-22.

　　Although federal law provides a safe harbor for forward-looking statements in private securities suits "accompanied by meaningful cautionary statements," *see* 15 U.S.C. § 78u-5, such statements are actionable if made with actual knowledge of their falsity. *In re Vivendi, S.A. Sec. Litig*, 838 F.3d 223, 246-47 (2d Cir. 2016). Here, Defendants' statements miss this safe harbor. Many of their statements concerned market conditions in the present, not the future. *Id.* at 246 ("The safe-harbor provision does not protect . . . present representations"). And Plaintiffs' SAC alleges plausibly, based on representations from a confidential witness, that Defendants' genuinely forward-looking statements as to STM's growth and inventory were made with actual knowledge of their falsity. *Id.* at 247-49; *see also Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) ("Even when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth."). Moreover, these material statements were not accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from

those in the forward-looking statement," 15 U.S.C. § 78u-5(c)(A)(i), since a generic, boilerplate or "kitchen-sink disclaimer, listing garden-variety business concerns that could affect *any* company's financial well-being" is insufficient to trigger the statutory safe harbor. *Vivendi*, 838 F.3d at 247 (emphasis in original).

In a similar vein, Defendants' SEC Form 20-F Annual Report is also actionable, since it portrayed risks that had actually materialized at STM as hypothetical, including a reduction in demand, high inventory levels and broader downturns in the semiconductor industry at-large. "Courts in this Circuit have held that a company's purported risk disclosures are misleading where the company warns only that a risk may impact its business when that risk has already materialized." *In re Facebook, Inc.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013); *see City of Hialeah Employees' Ret. Sys.*, __ F.4th __, 2025 U.S. App. LEXIS 22032, at *22-24 (risk disclosure in SEC filing that listed hypothetical risk to company, which, according to a confidential witness, had actually materialized, was actionable). And, akin to Defendants' generic disclaimers at the start of earnings calls, the boilerplate, kitchen-sink disclaimer on STM's Form 20-F plainly does not trigger the protections of the forward-looking statement safe harbor, since such "vague" disclaimers do not constitute "meaningful cautionary language." *Vivendi*, 838 F.3d at 247.

Defendant's contentions to the contrary are not meritorious. Though statements of opinion are often immune from liability, they are actionable where, as here, the defendant omitted material facts whose omission makes the statement misleading to a reasonable investor, or otherwise supplied false supporting facts. *In re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 43 (2d Cir. 2025). Here, Plaintiffs' SAC alleges plausibly that Defendants made material misrepresentations of concrete facts, and did not disclose non-publicly available information

indicating decreasing demand, increasing inventory and channel-stuffing conduct to artificially manipulate those metrics, to investors. Additionally, contrary to Defendants' assertions, this case is readily distinguishable from *In re Mobileye Glob. Sec. Litig.*, 24 Civ. 310 (DLC), 2025 U.S. Dist. LEXIS 71923 (S.D.N.Y. Apr. 15, 2015) and *Lew v. ON Semiconductor Corp.*, 24 Civ. 594, 2025 U.S. Dist. LEXIS 131974 (D. Ariz. July 11, 2025), two recent district court decisions granting motions to dismiss private securities actions against similar companies. Neither case involved, as here, a confidential witness who contemporaneously served as a high-ranking official at the defendant company and attested to the falsity and scienter of the company's statements to investors. Moreover, in *Mobileye*, the company provided far more meaningful disclaimers and disclosures in its SEC filings as compared to Defendants' boilerplate disclaimers here. Finally, Defendants' credibility attacks on Plaintiffs' confidential witnesses are misplaced, since "[w]hether these former employees will prove to be credible and percipient sources is not at issue at this stage of the litigation." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 169 (2d Cir. 2021).

## CONCLUSION

Based on the foregoing, I deny Defendants' motion to dismiss. The parties shall appear for an initial pre-trial conference on December 4, 2025 at 2:30 p.m. in Courtroom 14D.

The Clerk of Court shall terminate ECF Nos. 37 and 43.

SO ORDERED.

Dated:    September 6, 2025
          New York, New York

ALVIN K. HELLERSTEIN
United States District Judge